UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICOLE STOCKMAN,

    Plaintiff,

v.                                             CASE NO. 2:17-cv-76-FtM-38MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff alleged in her DIB application that she became disabled on November 1, 2010. (Tr. 32, 120.) Plaintiff alleged in her SSI application that she became disabled on August 1, 2008. (Tr. 768, 774.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on May 20, 2015, at which Plaintiff was represented by an

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

attorney.[2]  (Tr. 826-89.)  The ALJ found Plaintiff not disabled from November 1, 2010 through August 24, 2015, the date of the decision.  (Tr. 18-31.)

In reaching the decision, the ALJ found that Plaintiff had "the following severe impairments: bipolar disorder with depression and anxiety, history of ADD (Attention Deficit Disorder)/Attention Deficit Hyperactivity Disorder (ADHD), personality disorder, moderate to severe left ear sensorineural hearing loss, mild right ear sensorineural hearing loss, migraines, and history of alcohol and marijuana dependence in sustained remission."  (Tr. 19 (internal citation omitted).)  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work.  (Tr. 23.)  The ALJ further found that Plaintiff could not perform any past relevant work (Tr. 29), but that she could perform jobs that exist in significant numbers in the national economy, including surveillance system monitor, addresser, table worker, checker II, and housekeeping/cleaner (Tr. 30.)  In reaching this conclusion, and in assessing to what extent Plaintiff's limitations erode the unskilled, light occupational base, the ALJ relied on the testimony of the vocational expert ("VE").  (Tr. 30.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from November 1, 2010 through August 24, 2015.  Plaintiff has

---

[2] Plaintiff's initial request for a hearing was dismissed as untimely (Tr. 72-76); however, on May 16, 2014, the Appeals Council remanded the case, finding that the Agency's failure to notify Plaintiff's representative constituted good cause for the untimely request for hearing (Tr. 77-80).

exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED and REMANDED**.

**I.     Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to

determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises four general issues on appeal. First, Plaintiff argues that the VE's testimony regarding the jobs she could perform does not constitute substantial evidence so as to meet the Commissioner's burden of showing that Plaintiff can perform other work existing in significant numbers in the national economy. Second, Plaintiff argues that the ALJ failed to adequately consider her asthma impairment. Third, Plaintiff argues that the ALJ failed to adequately consider her neuropathy in determining her ability to work. Finally, Plaintiff argues that the ALJ erred in analyzing her disability claims with a November 1, 2010 onset date, as opposed to the August 1, 2008 onset date provided in her SSI application. Defendant concedes that the ALJ erred in identifying certain jobs that Plaintiff could perform, but contends that such an error was harmless. Defendant also responds that the ALJ properly considered Plaintiff's impairments and properly utilized the November 1, 2010 onset date. The undersigned agrees with Plaintiff on the first issue and, therefore, does not reach Plaintiff's additional arguments.

### A. The ALJ's Decision and VE Testimony

The ALJ found that Plaintiff had the RFC to perform:

a wide range of Light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the Dictionary of Occupational Title [sic] (D.O.T.) and regulations, as well as, lift/carry 10 pounds

frequently. This includes sedentary work as defined in Dictionary of Occupational Title [sic] (D.O.T.) and the regulations. The claimant has no limits for sitting in an eight-hour workday. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling and stooping. She is to perform no crawling, no crouching and no climbing of ladders/ropes/scaffolds. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. In the course of work, the claimant is to have no exposure to extremes of hot, humidity or cold temperatures. She is to perform no work in loud[,] noisy environments. Secondary to her mental impairments, she retains the capacity to understand, remember and carry[-]out simple instructions and perform simple routine tasks as consistent with unskilled work. In the course of work, she is to have no contact with the public and only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same.

(Tr. 23.)

The ALJ found that Plaintiff could not perform any past relevant work (Tr. 29), but that she could perform jobs that exist in significant numbers in the national economy (Tr. 30). The ALJ relied on the VE's testimony that she could perform the jobs of surveillance system monitor, addresser, table worker, checker II, and housekeeping/cleaner in response to a hypothetical that included Plaintiff's RFC limitations.[3] (Tr. 30-31.) However, when cross-examined by Plaintiff's attorney at the hearing, the VE identified a conflict between the general

---

[3] Although the ALJ identified the position as "checker II," the Commissioner contends that the ALJ meant "checker I." Upon review, it appears that the ALJ mistakenly referred to "checker II" in the decision and meant to identify the "checker I" position. As such, the undersigned will utilize the "checker I" position when addressing the first issue on appeal.

educational requirements ("GED") listed in the DOT for certain jobs identified by the VE that Plaintiff could perform and his testimony, in light of Plaintiff's hypothetical limitation to simple instructions. The following discussion occurred between Plaintiff's attorney and the VE:

> Q. [T]he [jobs] we arrive[d] at, I think, [we]re surveillance system monitor; the addresser; and the table worker; and the checker?
> A. Yeah . . . let me look up the GED on this surveillance system monitor . . . Okay. Surveillance system monitor GED is at 313. So it's out, upwards of three . . .
> Q. [E]ven if the GED is, though, say a reasoning – a reasoning level, not of three, but of two. What is the Dictionary of Occupational's define [sic] of reasoning level two as?
> A. Okay. Two as far as GEDs are four to six grade [sic] reasoning, math, and language, four to six grade [sic]. So this is a fifth grade [sic], so that would fit into the range of a GED of 2.
> Q. Right. Last time I saw though of the DOT as far as the written definition of the reasoning level 2, it did involve at least detailed instructions. It says it's uninvolved but it's detailed. Is that your understanding as well?
> A. Yeah. Yeah, I just looked that up and I'm aware . . . I said with a 2, a 1 and 2 as far as the fifth grade level.
> Q. But in terms of – I understand the grade level, the ranges they give. But if the reasoning level 2 involves some detailed instructions, then doesn't that create tension with the hypothetical, which called for only simple instructions . . . If you narrow the focus down to the level of instruction and not just the grade level, then it would seem to conflict wouldn't it?
> A. That is true based on a study by the Relocation Research, where it indicates unskilled work is – you can accomplish if below an IQ of 80 and below a second grade level. Semi-skilled is set to seventh grade. So, you know, if you blend that in, that would fit under the, you know, a person second to seventh grade, [the hypothetical person is] fifth grade, would be semi-skilled, so that person with an IQ of 80 to 90 could fit into that area.

6

> Q. If they had an IQ below 80 though, then would those level 1 and 2 jobs not be possible, is what you're saying?
> A. Well, below 80 – a lot of people below 80 can do work, but for statutory reasonableness, then we've [sic] talking about [INAUDIBLE] sheltered employment, simple employment, stuff like that, below that . . .

(Tr. 880-83.) In other words, the VE recognized a conflict between the jobs with a GED reasoning level of 2 requiring detailed instructions under the DOT and his testimony that a hypothetical person limited to simple instructions could perform those jobs. (*Id*.) The ALJ ultimately concluded that Plaintiff was not disabled through the date of the decision. (Tr. 31.)

### D. Analysis

Plaintiff argues that the ALJ erred in relying on the VE's testimony in light of the conflict between the jobs requiring a GED reasoning level of 2 and Plaintiff's limitation to performing jobs with simple instructions. Further, Plaintiff argues that the ALJ erred in identifying the housekeeping/cleaner job without asking the VE to provide the number of jobs available in the national economy. Finally, Plaintiff contends that the ALJ committed harmful error because the only job accurately identified by the ALJ is the table worker job, which consists of an insignificant number of jobs in the national economy, only 2,425 jobs.

In response, the Commissioner concedes that the ALJ erred with respect to the system surveillance monitor job, because the VE clearly recognized that the hypothetical person could not perform a job with a GED reasoning level of 3, and

7

with respect to the housekeeping/cleaner job. However, the Commissioner argues that such an error was harmless because the ALJ accurately identified the checker, addresser, and table worker jobs as those that Plaintiff is capable of performing that exist in significant numbers in the national economy. The undersigned disagrees with the Commissioner's position that the ALJ's error was harmless in this instance and recommends remand for the following reasons.

Once an ALJ determines that the claimant cannot perform her past relevant work, the Commissioner bears the burden of proving the claimant is capable of performing work that exists in significant numbers in the national economy. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). The Commissioner must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Id*. (citation omitted).

SSR 00-4p provides in part:

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 198704, at *2 (Dec. 4, 2000). SSR 00-4p further provides, "the adjudicator has an affirmative responsibility to ask about any possible conflict between the VE or VS evidence and information provided in the DOT." *Id.* This means, under SSR 00-4p, the ALJ must specifically ask the VE if there is a

8

conflict and if the ALJ learns of a conflict, he is required to discuss and resolve the conflict before relying solely on the VE's testimony. However, an ALJ does not have an affirmative duty to "independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT." *Brijbag v. Astrue*, No. 8:06-cv-2356-T-MAP, 2008 WL 276038, at * 2 (M.D. Fla. Jan. 31, 2008) (citations omitted). Such is the case because "the VE's testimony 'trumps' the DOT," and an ALJ may rely solely on the VE's testimony without resolving the conflict. *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089 (2000). But, "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." SSR 00-4p, 2000 WL 198704, at *2.

Here, an apparent unresolved conflict exists between the VE's testimony and the DOT. Namely, on cross-examination by Plaintiff's attorney, the VE recognized that the DOT GED reasoning level 2 requires "detailed instructions" while the hypothetical provided by the ALJ included a limitation of work involving only "simple instructions." As noted by Plaintiff, the jobs of addresser and checker I include a GED reasoning level 2 requiring detailed instructions. (Docs. 20-2 at 2 & 20-4 at 1.) The undersigned finds that the ALJ failed to elicit a reasonable explanation for the conflict, or to otherwise resolve the conflict, prior to relying on the VE to determine that Plaintiff could perform those jobs. Indeed,

the ALJ failed to question the VE further with respect to the conflict.[4] Although the VE apparently attempted to explain that the jobs identified may be available to individuals within a certain IQ range, the ALJ did not reference such explanation (or how it applies to Plaintiff) in the decision. (Tr. 882-83 ("Q. If you narrow the focus down to the level of instruction and not just the grade level, then it would seem to conflict wouldn't it? A. That is true based on a study by the Relocation Research, where it indicates unskilled work is – you can accomplish if below an IQ of 80 and below a second grade level. Semi-skilled is set to seventh grade. So, you know, if you blend that in, that would fit under the, you know, a person second to seventh grade, he's fifth grade, would be semi-skilled, so that person with an IQ of 80 to 90 could fit into that area. Q. If they had an IQ below 80 though, then would those level 1 and 2 jobs not be possible, is that what you're saying? A. Well, below 80 – a lot of people below 80 can do work, but for the most part as far as statutory or reasonableness, then we've [sic] talking about [INAUDIBLE] sheltered employment, simple employment, stuff like that, below that . . .").) Moreover, the ALJ did not address Plaintiff's actual IQ in the decision and, as noted by Plaintiff, while the ALJ rejected certain low IQ scores of Plaintiff as invalid in the decision (Tr. 23), the ALJ did not address the validity of certain scores that appear to fall below the 80 to 90 range that the VE referenced in his

---

[4] Notably, the ALJ did resolve a separate conflict raised by the VE. (Tr. 31 (addressing and resolving a conflict between the DOT and VE testimony with respect to jobs requiring a sit/stand option).)

discussion (Tr. 494).

The undersigned recognizes *Jones* and its progeny, holding that even where a conflict between the DOT and VE testimony exists, "the VE's testimony 'trumps' the DOT," and an ALJ may rely solely on the VE's testimony without resolving the conflict. *See Jones*, 190 F.3d at 1230. However, this case is distinguishable in that an apparent unresolved conflict exists in the record, brought out by Plaintiff's attorney who presented evidence of such conflict via cross-examination of the VE. *Compare* SSR 00-4p, 2000 WL 198704, at *2 ("When there is an *apparent unresolved conflict* between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.") (emphasis added), *with Cousins v. Colvin*, No. 2:12-cv-505-FtM-29DNF, 2013 WL 5278271, at *6 (M.D. Fla. Aug. 23, 2013) ("[I]f the ALJ asks the VE whether any conflicts exist between the DOT and the VE's statements, and the VE responds in the negative, 'the ALJ is not required independently to identify whether there is any inconsistency.' *This is especially true when no question of consistency is raised at the hearing by Counsel.*") (emphasis added) (citations omitted), adopted as modified in 2013 WL 5278483; *see also Akins v. Comm'r of Soc. Sec.*, No. 6:08-cv-1575-Orl-DAB, 2009 WL 2913538, at *5 (M.D. Fla. Sept. 10, 2009) ("While not entirely clear, it does appear that the DOT descriptions are not consistent with [the] opinion of the

11

VE that a claimant limited to simple repetitive tasks could perform work at reasoning level 2 and 3. At the very least, the record does not indicate any explanation as to how the hypothetical claimant limited to only simple repetitive tasks could perform any of these occupations, as described by the DOT.").

The undersigned disagrees with the Commissioner's argument that the ALJ committed only harmless error. The ALJ identified surveillance system monitor, addresser, table worker, checker, and housekeeping/cleaner as the five jobs that Plaintiff could perform. The Commissioner concedes that the ALJ erred with respect to two of the jobs: surveillance system monitor and housekeeping/cleaner. The undersigned finds that the ALJ also erred with respect two other jobs: addresser and checker. The remaining job, table worker, has only 2,425 available jobs nationwide according to the VE. (Tr. 873.) It is unclear, then, whether the ALJ would have found that table worker, standing alone, constituted a significant number of available jobs, or whether such a determination would be correct. *See, e.g., Vickery v. Colvin*, No. 3:15-cv-899-J-JRK, 2016 WL 4698571, at *5 (M.D. Fla. Sept. 8, 2016) (reversing the Commissioner's decision where the ALJ's error left unclear whether the ALJ actually found that a mere 3,703 positions nationally constituted a "significant number" and noting that Judge Klindt's "research has not uncovered a single case affirming nearly such a low number of jobs nationally as a significant number. Instead, the numbers affirmed as significant tend to be substantially

12

higher than the 3,702 positions at issue here") (citations omitted).

### III. Conclusion

The undersigned finds that the Commissioner failed to meet her burden of proving the claimant is capable of performing work that exists in significant numbers in the national economy, as an apparent unresolved conflict exists in the record between the DOT and the VE's testimony. Therefore, the undersigned cannot find that substantial evidence supports the Commissioner's decision, or that a full and fair record was developed regarding the vocational opportunities available to Plaintiff. On remand, the ALJ should be directed to consider and resolve any conflicts between the DOT and VE testimony, and develop a full and fair record regarding the vocational opportunities available to Plaintiff. In light of this conclusion, the Court need not address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008). However, on remand, the ALJ should also re-evaluate Plaintiff's alleged onset date and whether Plaintiff's impairments from asthma and/or neuropathy should have been considered.

Accordingly, it is **RECOMMENDED** that:

1. The Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ: (a) to reconsider and resolve any apparent conflicts between the DOT and the VE's

testimony with respect to jobs available in the national economy that Plaintiff can perform, and, if necessary, to further develop the record; (b) to reevaluate whether Plaintiff's asthma and neuropathy impairments should be considered and reevaluate Plaintiff's RFC assessment, if necessary; (c) to reevaluate Plaintiff's alleged onset date; and (d) conduct any further proceedings deemed appropriate.

2. The Clerk of Court be directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application should be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). The Court's Order on this Report and Recommendation should not be interpreted as extending the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ENTERED** at Jacksonville, Florida, on November 27, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Sheri Polster Chappell
United States District Judge

Counsel of Record